UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| SHEPHERD SEED COMPANY, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> PIONEER HI-BRED INTERNATIONAL, INC., <br><br> Defendant. | 3:18-CV-03001-RAL <br><br><br> OPINION AND ORDER DENYING MOTION TO DISMISS |

Plaintiff Shepherd Seed Company, LLC (Shepherd Seed) sued Defendant Pioneer Hi-Bred International, Inc. (Pioneer) for breach of contract, claiming that Pioneer owes it bonus payments for selling Pioneer's soybean seed. Doc. 8. Pioneer moved to dismiss Shepherd Seed's amended complaint, arguing that the statute of frauds made the alleged contract unenforceable. Doc. 9. Because Shepherd Seed has adequately pleaded an exception to the statute of frauds, Pioneer's motion to dismiss is denied.

I. Facts

In 2010, Scott Johnson, a Pioneer representative, began recruiting Steve Shepherd and his sons Caleb and Shane (collectively "the Shepherds") to sell Pioneer soybean seed in bulk. Doc. 8 at ¶¶ 5, 7. Selling Pioneer soybean seed in bulk required building a costly bulk system, but Pioneer's ProBulk System Sales program allowed bulk seed sales representatives to receive bonuses of $2.50 from Pioneer for every unit of bulk sales, up to 75% of the construction or purchase price of the bulk system, excluding concrete and electricity costs. Doc. 8 at ¶¶ 7–8.

1

During an event Pioneer hosted in Chamberlain, South Dakota, in the fall of 2010, Pioneer's representatives introduced the Shepherds to the ProBulk System Sales program and persuaded them to sell Pioneer's seed in bulk. Doc. 8 at ¶¶ 7–8. Sometime during or shortly after the event in Chamberlain, the Shepherds, as officers of Shepherd Seed, executed a written ProBulk System Sales Representative Agreement (Agreement) provided by Pioneer. Doc. 8 at ¶ 9. Shepherd Seed alleges that this Agreement constituted a written contract between the parties embodying the terms of the ProBulk System Sales program, namely that bulk seed sales representatives would receive the bonus payments discussed above. Doc. 8 at ¶ 9. Shepherd Seed provided the executed Agreement to Johnson, who in turn submitted the Agreement to Pioneer. Doc. 8 at ¶ 10.

Relying on Pioneer's representations in the Agreement and at the Chamberlain event, Shepherd Seed constructed a bulk system consisting of five bins, a seed treater and treater building, pumps, computer systems, and the other necessary components. Doc. 8 at ¶ 11. Shepherd Seed began selling Pioneer's seed in bulk out of its bulk system in 2011 and continued doing so through August 2016. Doc. 8 at ¶ 15. As part of the Agreement and the ProBulk System Sales program, Pioneer placed its logo on Shepherd Seed's bins and buildings at Shepherd Seed's expense. Doc. 8 at ¶ 14. Shepherd Seed expanded its bulk system in 2013 and submitted its costs of construction to Pioneer. Doc. 8 at ¶ 16. Shepherd Seed alleges that it was incentivized to expand when it did because the Shepherds understood that while Pioneer would be discontinuing the ProBulk System Sales program, bulk systems existing before that time would be grandfathered into the program. Doc. 8 at ¶ 16.

According to Shepherd Seed, Pioneer has refused to pay Shepherd Seed any of the bonuses promised under the ProBulk System Sales program and the parties' Agreement. Doc. 8 at ¶ 18. When Shepherd Seed inquired about the unpaid bonus payments, Pioneer initially claimed that the

payments were included in the periodic commission payments Shepherd Seed received. Doc. 8 at ¶ 19. Pioneer later claimed that no bonus payments were made because Shepherd Seed did not enter into an agreement with Pioneer to participate in the ProBulk System Sales program until 2015. Doc. 8 at ¶ 20.

Shepherd Seed filed an amended complaint against Pioneer in March 2018. Doc. 8. Count I of the amended complaint asserted a claim for breach of contract, alleging that Pioneer had violated the Agreement by failing to pay Shepherd Seed bonuses for selling Pioneer's soybean seed in bulk. Doc. 8 at ¶¶ 21–25. Count II of the amended complaint asserted a claim for breach of the implied covenant of good faith and fair dealing, alleging that Pioneer had violated the implied covenant by falsely claiming that the bonus payments had been made as part of Shepherd Seed's commission payments and by denying that Shepherd Seed was a participant in the ProBulk System Sales program. Doc. 8 at ¶¶ 26–31. Pioneer moved to dismiss the amended complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 9.[1]

## II. Standard for a Motion to Dismiss under Rule 12(b)(6)

On a motion to dismiss under Rule 12(b)(6), courts must accept a plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor, but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556

---

[1] Pioneer also requested oral argument on its motion. Because the parties' positions are clear from the briefs and because oral argument would not aid in the decisional process but would instead add more cost and delay to the case, this Court denies Pioneer's request.

3

U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Id., "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (alteration in original) (citation and internal marks omitted).

## III. Analysis

### A. Breach of Contract Claim

Pioneer's motion to dismiss Shepherd Seed's breach of contract claim turns on South Dakota's statute of frauds. Under that statute, an "agreement that by its terms is not to be performed within a year from the making thereof" is unenforceable unless the agreement is reduced to writing and signed by the party to be charged. SDCL § 53-8-2(1). The purpose of the statute of frauds "is to remove uncertainty by providing written evidence of an enforceable obligation," but the statute cannot itself be used to perpetrate a fraud. Biegler v. Kraft, 924 F. Supp. 2d 1074, 1084 (D.S.D. 2013) (quoting Jacobson v. Gulbransen, 623 N.W.2d 84, 90 (S.D. 2001)). Thus, for instance, a party could not "accept the benefits of a contract that the statute of frauds requires to be in writing, and then invoke the statute to avoid payment." Lampert Lumber Co. v. Pexa, 184 N.W. 207, 208 (S.D. 1921). To avoid such injustices, South Dakota recognizes certain exceptions to the statute of frauds. Jacobson, 623 N.W.2d at 90–91. The question here is whether one of these exceptions applies. Pioneer argues that Shepherd Seed fails to state a claim for breach of contract because although Shepherd Seed alleges a multi-year agreement, it fails to allege the

4

existence of a written contract signed by Pioneer. Pioneer evidently did not countersign the Agreement it had Shepherd Seed sign. Shepherd Seed does not contend that its Agreement with Pioneer could have been performed within one year such that the statute of frauds does not apply. Instead, Shepherd Seed argues that the doctrine of promissory estoppel removes the Agreement from the statute of frauds.

Promissory estoppel is a "recognized exception" to South Dakota's statute of frauds. Biegler, 924 F. Supp. 2d at 1086. The Supreme Court of South Dakota has provided two similar but slightly different tests for promissory estoppel. In some cases, the Supreme Court of South Dakota has identified the elements of promissory estoppel as "a promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance." Jacobson, 623 N.W.2d at 91 (alteration and internal marks omitted) (quoting Scott v. Hyde, 440 N.W.2d 528, 531 (S.D. 1989)). Such a promise becomes binding "if injustice can be avoided only by enforcement of the promise." Id. (internal marks omitted). In other cases, however, the Supreme Court of South Dakota has stated that promissory estoppel requires: 1) a promise; 2) that the detriment suffered in reliance on the promise was substantial in an economic sense; 3) that the loss to the promisee was foreseeable by the promissor; and 4) that the promisee acted reasonably in justifiable reliance on the promise made. Durkee v. Van Well, 654 N.W.2d 807, 815 (S.D. 2002), abrogated on other grounds by Mundhenke v. Holm, 787 N.W.2d 302 (S.D. 2010).

Shepherd Seed has adequately pleaded promissory estoppel under both tests. According to the amended complaint, Pioneer promised Shepherd Seed bonus payments in exchange for Shepherd Seed selling Pioneer's soybean seed in bulk. Doc. 8 at ¶¶ 5–9. Taking Shepherd Seed's factual allegations as true and construing all inferences in its favor, Pioneer should have expected

5

that its promise would induce Shepherd Seed to enter into the Agreement and build a bulk system, particularly when Pioneer promised to pay bonuses amounting to up to 75% of the construction price of the bulk system (excluding concrete and electricity costs) and Shepherd Seed signed a contract to that effect. Doc. 8 at ¶¶ 8–10. Pioneer's promise induced Shepherd Seed to build a costly bulk system, which consisted of five bins, a seed treater and treater buildings, pumps, and a computer system. Doc. 8 at ¶¶ 7, 11. Although Pioneer argues that Shepherd Seed's reliance on Pioneer's alleged promise was unreasonable, Shepherd Seed has alleged that Pioneer recruited Shepherd Seed to sell its product, invited Shepherd Seed to the event in Chamberlain, and provided Shepherd Seed with a contract setting forth the terms of the promise, which Shepherd Seed then signed and returned to Pioneer. Doc. 8 at ¶¶ 5, 7–10. These allegations make it plausible that Shepherd Seed had a reasonable basis for relying on Pioneer's promise. In addition, constructing the costly bulk system caused a detriment to Shepherd Seed that was substantial in an economic sense. Finally, Shepherd Seed has pleaded enough facts to make it plausible that injustice can be avoided only by enforcing Pioneer's promise to pay Shepherd Seed bonuses. Pioneer's motion to dismiss Shepherd Seed's breach of contract claim is denied.

**B.     Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing**

All contracts in South Dakota contain an implied covenant of good faith and fair dealing. Nygaard v. Sioux Valley Hosps. & Health Sys., 731 N.W.2d 184, 193 (S.D. 2007). This implied covenant allows a plaintiff to sue for breach of contract when the defendant's lack of good faith "limited or completely prevented" the plaintiff from receiving the reasonably expected benefits of the contract. Id. at 194 (citation omitted). A plaintiff suing under the implied covenant can recover for breach of contract even when the defendant did not violate the contract's express terms. Id. at 194.

Pioneer argues that Shepherd Seed's claim for breach of the implied covenant of good faith and fair dealing must be dismissed because there is no enforceable contract between the parties and Shepherd Seed therefore lacks any basis for an implied covenant of good faith and fair dealing. See id. at 193 ("South Dakota does not recognize an independent tort for breach of the implied covenant of good faith and fair dealing.") (citation and alteration omitted); Garrett v. BankWest, Inc., 459 N.W.2d 833, 841 (S.D. 1990) (explaining that the implied covenant of good faith must arise from the language of the contract or "must be indispensable to effectuate the intention of the parties") (citation omitted). As explained above, however, Shepherd Seed has adequately pleaded that an enforceable contract existed between the parties, and it therefore has a basis for asserting a claim for breach of the implied covenant of good faith and fair dealing against Pioneer. See Dan B. Dobbs & Caprice L. Roberts, Law of Remedies: Damages, Equity, Restitution § 13.1 (3d ed.) ("A valid contract is . . . created if plaintiff successfully argues estoppel to block defendant's statute of frauds defense to an otherwise valid contract."). If Shepherd Seed had pleaded only promissory estoppel rather than pleading the existence of a contract whether oral or written, then there likely would be no viable claim for breach of the implied covenant of good faith and fair dealing. However, Count I of the amended complaint, which survives Pioneer's motion to dismiss, is a breach of contract claim, the amended complaint thus plausibly pleads the existence of a contract, and an implied covenant of good faith and fair dealing inheres in every contract under South Dakota law.

The Supreme Court of South Dakota has recognized the viability of a claim for breach of the covenant of good faith and fair dealing in a similar fact setting. In Table Steaks, Inc. v. First Premier Bank, N.A., 650 N.W.2d 829 (S.D. 2002), a Colorado restaurant and bar with pool tables named Table Steaks completed an application to process its Mastercard and Visa credit card

transactions through First Premier Bank. Id. at 832. No written acceptance of the application by the bank evidently existed, but Table Steaks submitted and the bank processed credit card transactions for over two years as if a contractual relationship existed. Id. Without forewarning to Table Steaks and based on a report of possible fraudulent card transactions at Table Steaks, the bank ceased processing Visa and Mastercard transactions on a busy weekend when Table Steaks happened to be hosting a pool tournament. Id. at 832–33. The bank also placed Table Steaks on the Combined Terminated Merchant File listing which prevented Table Steaks from readily entering into a relationship with any other merchant processing credit card bank. Id. at 833. After a jury verdict for Table Steaks including an award on a breach of contract claim, the bank appealed. The Supreme Court of South Dakota noted that it was unclear if any contract was written or oral, but deemed there to be some contract "[r]egardless of the contract's form." Id. at 834. In turn, the Court found there to be an implied covenant of good faith and fair dealing. The Court then affirmed the jury verdict for breach of contract because the bank "did not act reasonably or in good faith when it abruptly terminated its credit card processing agreement with Table Steaks" and therefore the bank's "method of termination of the contract was unreasonable and a breach of the implied covenant of good faith and fair dealing." Id. at 835. In short, even if Pioneer never countersigned the Agreement and even if any contract between Pioneer and Shepherd Seed was only oral, a claim of breach of an implied covenant of good faith and fair dealing may proceed. See also Kiernan v. Creech, 268 P.3d 312, 319 (Alaska 2012) (holding that the plaintiff's claim for breach of the implied covenant of good faith and fair dealing survived summary judgment because the plaintiff had alleged the existence of an oral agreement and there was a question of fact concerning whether promissory estoppel saved the agreement from the statute of frauds).

Pioneer's motion to dismiss Shepherd Seed's claim for breach of the implied covenant of good faith and fair dealing is denied.

### IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that Pioneer's Motion to Dismiss for Failure to State a Claim, Doc. 9, is denied.

DATED this 21st of June, 2018.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE